GARDEN, JUDGE:
Around 5 o’clock P.M., on the evening of February 17, 1972, the claimant was proceeding in his car from his place of employment in Charleston to his home in Winfield, West Virginia. He was travelling in a westerly direction on Seventh Avenue in Charleston near its intersection with 35th Street. Seventh Avenue, at this point, is a two-lane roadway for westbound traffic and was of concrete construction. The weather conditions were poor in that it was raining and the roads were wet. Apparently, some work in the nature of grading had been done along the north berm of Seventh Avenue for there was a considerable amount of mud along the north side of the street.
The claimant was traveling at a speed of about 35 miles per hour in the left-hand lane, and when just west of the intersection, he observed traffic ahead of him slowing down. Looking into his *79 rear-view mirror, he was able to determine that the right-hand lane was free of traffic, and he, thus, turned to the right and into the right-hand lane. As this movement was being made, his left-front wheel struck a large hole in the highway which was located in the right-hand lane. As a result, the left-front tire of claimant’s car ruptured causing claimant to lose control of his automobile. Out of control, he continued about 150 feet west in the right-hand lane of Seventh Avenue where his car left the highway and struck the guardrail erected on the north side of the highway.
On cross-examination, the claimant testified that he was an accountant and worked in an office in downtown Charleston, and that Seventh Avenue was his usual route home from the office. He indicated, however, that his work took him to, at least, ten counties in central West Virginia, and he, thus, did not use Seventh Avenue too frequently. He did admit that he had observed the hole three or four days prior to the accident and that it was about three feet by three feet and maybe two feet deep. On this prior observation, the hole was not filled with water. He explained his failure to observe the hole on the date of the accident by reason of it being covered with water.
Officer D. W. Vaughan of the Charleston Police Department testified that he, together with Officer Arthur E. Collier, investigated the accident. He stated that while he wasn’t sure of the dimensions of the hole, he was of the opinion that it was a large hole and between 8 to 10 inches in depth. While he did not remember the hole being covered completely with water, he did state that it had some water in it. According to Officer Vaughan, Seventh Avenue at and near the accident scene was of concrete construction; that it was poured in blocks with expansion joints between the blocks; and that the hole was located at a corner of one of the blocks. He was of the opinion that the hole had been worn over a period of months and had not resulted from a sudden breaking.
Officer Collier, whose testimony was introduced through his deposition, testified that when he arrived at the accident scene, the right-hand westbound lane was partially covered by water and that he also observed a big hole in the right-hand lane which was covered with water. He indicated that prior to the date of claimant’s accident, he had struck the hole and had almost lost control of his car; that the hole was 12 inches long, 2 feet wide and 8 to 10 inches deep; that he had reported the existence of the hole *80 two or three times to police headquarters within one to two weeks prior to the claimant’s accident, and that while he didn’t know if headquarters had reported the same to respondent, standard procedure required headquarters to report the same to respondent or to the Charleston Street Department, depending on which agency had the responsibility of a particular street.
The respondent called as its only witness, its claims investigator, Edward Goodwin. Through Mr. Goodwin there was introduced into evidence a foreman’s report reflecting that on February 3, 1972, a work crew had requisitioned two tons of “cold patch” and had used the same to patch Seventh Avenue, a street of one and three quarter miles length. He was unable to state whether the subject hole was in existence on February 3, 1972, and if so, whether it had been patched. He stated that he had made an investigation as to whether the respondent had received notice of the hole prior to claimant’s accident and could find none. He admitted, however, that respondent did not follow any set procedure in respect to logging or recording complaints concerning highway conditions.
In passing, it should be noted that both Officers Vaughan and Collier testified that upon examination of the hole, they were unable to detect any evidence of recent patching. They further testified that after the claimant and his car had been removed from the accident scene, and as they were leaving the accident scene, another car proceeding west of Seventh Avenue struck the same hole, spun completely around but managed to avoid striking the guardrail.
Addressing ourselves first to the question of claimant’s alleged contributory negligence, we are of opinion that the evidence does not sustain this affirmative defense. It is true that the claimant quite candidly admitted that he had observed this hole three or four days prior to the accident, but as he testified, and as corroborated by Officer Collier, its presence was completely obscured by water. In addition, we are of opinion that claimant had the right to assume that respondent would have discharged its legal duty and repaired this hole within the three or four day interval. We also do not believe that claimant violated any statutory prohibition in attempting to pass the slower moving left lane of traffic On the right.
On the other hand, and while we recognize that the respondent is not an insurer of those using its highways, we believe the evidence *81 clearly indicates that respondent failed to discharge its duty of exercising reasonable care in maintaining Seventh Avenue in a reasonably safe condition for the traveling public, and, in particular, this claimant. While there was no proof that the respondent received direct notice of the existence of this dangerous condition, it is clear from the testimony of Officer Collier that this defect was in existence for, at least, one and possibly two weeks prior to the accident. This Court recently made an award in Lohan v. Department of Highways, 11 Ct. Cl. 39, (D-910), partially on the basis that the highway defect was on U. S. 60 east of Charleston, a heavily traveled highway. This accident took place on Secondary State Route 28 which, in 1972, was a principal artery leading from downtown Charleston to Dunbar and other points west. As indicated before, while the evidence fails to establish that respondent knew of the defect, we feel that a preponderance of the evidence clearly demonstrates that it should have known of the same.
As a result of striking the guardrail, the claimant suffered a mid-shaft fracture of the femur of his left leg and a large scalp wound. He was removed from the accident scene by ambulance and was taken to the Charleston General Hospital where he was placed under the care of Dr. Carl J. Roncaglione, an orthopedic surgeon. He remained in the hospital until March 16, 1972. While confined, he was first placed in skeletal traction in order to reduce the fracture, and thereafter, the traction was removed and an internal medullary pin was inserted in the left femur. On March 17, 1974, the claimant was again admitted to the hospital at which time Dr. Roncaglione removed the medullary pin, and he was discharged on March 20, 1974.
He was followed by the doctor on three occasions in his office, the last visit being on April 25, 1974. According to Dr. Roncaglione’s report dated December 17, 1974, which was introduced into evidence, the claimant suffered a severe fracture of his femur, much soft tissue damage and great pain; that as a result of the injury, a good bit of scar tissue will develop which will, in the future, cause early fatigue and some limitation of motion in the left leg, but the doctor doubted that the injury would precipitate any arthritic development. The respondent obtained an independent examination of the claimant by Dr. Robert L. Ghiz, also an orthopedic surgeon. Dr. Ghiz’s report dated November 13, 1974, was also. introduced into evidence and it reflected that the *82 claimant’s prognosis was quite good, but that the claimant would suffer intermittent soreness and pain in his left hip and left thigh for some time to come.
In respect to damages, the claimant testified that he was employed as an accountant and lost wages of $1,937.50 in 1972, and $825.00 in 1974, or a total of $2,762.50. While his testimony was not corroborated by his employer, we are of opinion that he sufficiently established this item of loss. He further testified that his clothing, which was ruined as a result of the accident, was worth $100.00, and copies of bills from the Charleston General Hospital covering the charges for claimant’s two confinements in a total amount of $2,647.63 were introduced into evidence. These last two items of special damage will also be considered in fixing the amount of the award.
On the other hand, the only proof offered in respect to Dr. Roncaglione’s bill was the claimant’s testimony that it was about $678.00. No further evidence was introduced in support of this charge, nor was any testimony offered that the doctor’s charge was reasonable or necessary. In respect to the claimant’s 1970 Datsun, which claimant testified was damaged beyond repair, the only testimony offered as to fair market value was that of claimant who testified at one point that it was worth $1,400.00 and at another point $1,510.00. While this Court has been liberal in the past in respect to proper proof of damages, we are of opinion that unless items of special damages can be stipulated, we must require some semblance of proper evidence to support items of special damage. Consequently, the doctor bill and the automobile property damage claim will not be considered.
As heretofore indicated, being of opinion that the accident and resulting injuries to claimant proximately resulted from the negligence of respondent, and further believing that the claimant was free of contributory negligence, and that his injuries were serious, painful and to some extent permanent, we hereby make an award of $14,500.00.
Judge Ducker participated in the hearing and the decision of this case prior to his retirement.
Award of $14,500.00.